**UNITED STATES of America,
Appellee,**

v.

**Alhaji M. SESAY, Appellant.**

**No. 01-3100.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 2002.

Decided Dec. 24, 2002.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Mary B. McCord, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Darrell C. Valdez, Assistant United States Attorneys.

Before: GINSBURG, Chief Judge, and EDWARDS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Alhaji M. Sesay was convicted of possession with intent to distribute cocaine base and possession of a firearm by a convicted felon. Appellant's main argument on this appeal is that the District Court deprived him of his rights to confront witnesses and to present a defense when it excluded evidence that appellant had a pre-existing civilian complaint against the police officer who discovered the coat allegedly containing the gun and drugs that led to appellant's arrest. The District Court's evidentiary rulings were reasonable when they were issued before trial, but evidence presented during the trial undercut the rationale supporting the evidentiary exclusions. However, the defense did not raise any new objections, offer any proffers of evidence, or ask the trial court to allow introduction of the civilian complaint as substantive evidence. We are therefore constrained to review appellant's challenges to the evidentiary exclusions under the "plain error" standard. See FED.R.CRIM.P. 52(b). Because appellant has not met the heavy burden of showing plain error, see United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we reject his challenges relating to the disputed civilian complaint.

Appellant also challenges the District Court's exclusion of a disputed police report on hearsay grounds. It is clear that the District Court did not abuse its discretion in excluding the report. We therefore reject this claim.

## I. BACKGROUND

### A. January 9, 2000

The Government and defense present a similar picture of the events leading to appellant's arrest on January 9, 2000. The main point of difference between the two sides is whether the gun and narcotics that the police found in a coat in a car at the scene of the arrest belonged to appellant, or were the result of a plant.

Both sides agree that appellant and his friend, Jerrold Coates, were on the corner of 10th and M Streets, Northwest, in Washington, D.C., when Coates was shot in the back in a drive-by shooting. Ms. D, who lived in an upper-story apartment on that corner, heard the gunshots and looked out her window. She would later testify that she saw a young man holding a handgun and standing over what she presumed to be a victim lying in the street. Ms. D watched as a truck pulled up and the man with the gun dragged the victim toward it, put the victim in the front passenger seat, and got into the back seat himself. The

truck then drove away. Ms. D immediately called 911 to report what she had seen.

While the defense contends that appellant was not in fact holding a gun, both sides agree that Sesay's friend, Rashawn Fowler, arrived at the scene of the shooting in a Chevy Tahoe just as Ms. D described. Both sides also agree that Sesay helped the injured Coates into the front seat of the Tahoe before climbing into the back. Fowler then drove them to the Howard University Hospital, where Coates could receive the medical attention that he needed.

Several Metropolitan Police Department officers heard the radio run that there had been a shooting at 10th and M Streets, and heard that the victim had been picked up in a blue sport utility vehicle. Expecting that the victim might be taken to the nearest hospital, Officers Darris Larsen and Christopher Johnson went to Howard University Hospital. Once there, they saw a blue Chevy Tahoe parked in front. Officer Johnson saw the driver, Fowler, get out of the Tahoe and walk toward the hospital. Fowler was wearing a coat. Officer Johnson asked Fowler if he had just brought someone to the hospital who had been shot, and Fowler responded that he had.

Shortly thereafter, Officer Laurence Heinz and other police officers arrived at the hospital. Officer Heinz searched the Chevy Tahoe, beginning with the front seat and moving to the back seat. Evidence presented by the Government indicates that when Officer Heinz picked up a coat from the back passenger seat, a gun fell from it and hit the ground. Officer Heinz left the gun on the ground until officers from the crime scene unit arrived.

Heinz's search is the subject of controversy between the Government and the defense. The defense argues that Officer Heinz held a grudge against appellant, be-cause appellant had filed a complaint against him the previous year, after Officer Heinz arrested Sesay for reckless driving and driving without a permit. The defense argues that Officer Heinz thus possessed both the motive and opportunity to plant the weapon and narcotics. The Government replies, *inter alia,* that Officer Heinz did not know to whom the coat belonged when he searched it, because appellant was still in the hospital at the time of the search.

Officers Ralph Nitz, John Spencer, and Adrian Lancaster, from the crime scene unit, came to the hospital to collect and process the evidence. Officers Nitz and Lancaster recovered the gun and the coat from which it had fallen. The officers found 17 zip-locks of crack cocaine inside the outer left breast pocket of the coat. The coat was a size "large," and had some small rips and a small hole. Officer Nitz asked Fowler to try on the coat, which was far too small on him; the 275-pound Fowler wears a size "XXX."

The crime scene unit officers also seized a coat from the floor of the trauma room where the victim was being treated. This coat was a green Eddie Bauer parka with a hole through the back, and wet blood on the inside around the hole.

After the gun was found, appellant first appeared leaving the hospital and walking toward the Tahoe, before turning and walking away from it. Although it was very cold and everyone else on the scene wore coats, Government witnesses testified that Sesay was not wearing a coat. Officer Johnson stopped appellant and asked if he had brought someone to the hospital. Appellant replied that he had, and that he had arrived in the Tahoe. He explained that he had been on 10th Street when a friend was shot. He stated that another

friend passed by in the Tahoe and gave them a ride to the hospital.

Fowler claimed that he was standing with his hands on the police car when the police began searching the Tahoe. When Fowler saw the gun hit the ground, he recalled thinking, "I don't know where that came from. It ain't my gun." 5/16/00 Tr. 23. Fowler was arrested, but was released after giving a videotaped statement to the police suggesting that the jacket in the back seat belonged to Sesay. The police officers decided that the coat, firearm, and narcotics belonged to appellant.

## B. Procedural History and Evidentiary Rulings

On February 8, 2000, a federal grand jury returned a three-count indictment charging appellant with one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

At the pretrial motions hearing on April 11, 2000, defense counsel sought to question Detective Eduardo Voysest, who had spoken to witnesses on the night of the offense. The defense wanted to inquire of Voysest as to whether he knew about Officer Heinz's previous contact with appellant. The District Court sustained the Government's objection based on Officer Heinz's preliminary hearing testimony that he did not know about the complaint, as well as evidence that appellant was still inside the hospital when Officer Heinz found the gun, and evidence that Officer Heinz did not know to whom the gun or the coat belonged when he found them. Defense counsel did not seek permission to explore the relationship between Detective

Voysest and Officer Heinz to establish a foundation for asking Detective Voysest about Sesay's previous complaint against Heinz.

Subsequently, before the pretrial conference, the Government filed a "Motion to Exclude Evidence of Defendant's Complaint Against Officer." The Government argued that the evidence was irrelevant because, at the time when Officer Heinz discovered the gun, he was unaware that the person who had been in the back seat of the Chevy Tahoe was Sesay. At the pretrial conference on May 4, 2000, defense counsel argued that the defense still had not received discovery regarding the complaint against Officer Heinz, and proffered that the defense had a witness who could show that Officer Heinz was lying when he testified at the preliminary hearing that he did not know that a complaint had been filed against him. The Government responded that the complaint was not formal or written but was simply appellant's oral complaint made at the time of his arrest, which the police department was investigating.

The District Court addressed the Government's "Motion to Exclude Evidence of Defendant's Complaint Against Officer" at the pretrial conference. The court first stated that "there is absolutely not a shred of evidence anywhere that Officer H[einz] knew that Mr. Sesay was the person with whom the coat was associated and consequently with whom the gun was associated when he arrived on the scene...." 5/4/00 Tr. 47. However, the District Court recognized that a broader issue of Officer Heinz's credibility had been raised. The District Court therefore left open the possibility of the defense revisiting Sesay's complaint against Officer Heinz at some "appropriate juncture" during trial:

So what the defense will be entitled to do is, at the appropriate juncture, to ask

the question or to raise the point about Mr. Sesay having lodged a complaint against Officer H[einz], and in that regard whether or not Officer H[einz] spoke truthfully, if it can be shown that he has said one thing in one instance and another thing in another instance, and also with regard to how it may have colored, if at all, the testimony that he's offered in connection with the facts of this case.

5/4/00 Tr. 48-49.

During the pretrial conference, defense counsel also briefly mentioned that, in addition to cross-examining Officer Heinz regarding his potential bias based on the complaint, he would like to inquire of the "other officers" about their knowledge of Officer Heinz's prior contact with appellant. Defense counsel did not name those "other officers" or provide any basis for his assertion "that the actions of the officers assisting Officer H[einz] at the time of Mr. Sesay's arrest, may in fact have been also impacted upon by the bias of Officer H[einz]." 5/4/00 Tr. 38. The District Court denied this request, because "[t]here [was] nothing to suggest that anyone else's thinking has been influenced by the conflict characterized as existing between Detective H[einz] and Mr. Sesay and any other officers." 5/4/00 Tr. 49. Following this ruling, defense counsel did not ask permission to *voir dire* the "other officers" outside the jury's presence in order to establish a foundation for his proposed inquiry.

On May 15, 2000, a jury trial commenced. At trial, the Government indicated that Officer Heinz would not be called as a witness. Defense counsel asked that he be made available for questioning by the defense. The Government objected, arguing that Officer Heinz could not be called by the defense as a witness solely to be impeached. The trial judge ruled that the defense could not call Officer Heinz solely to impeach him, but stated that the defense could call Officer Heinz after making a proffer of his testimony. The prosecution subsequently filed a memorandum arguing more fully that the only direct evidence to be offered by Officer Heinz would be adverse to the defendant and cumulative of other testimony, and that appellant should not be permitted to use impeachment evidence concerning the complaint as a subterfuge to get otherwise inadmissible evidence before the jury. The trial judge then indicated that his ruling had been made, and noted that both parties had received a transcript of the original ruling. At the start of the defense case, as the examination of Officer Heinz began, the District Court "remind[ed] everyone of the limitations that I have placed on inquiries to be made during the continuation of this trial, strict limitations." 5/17/00 Tr. 50. The defense's questioning of Officer Heinz was then relatively limited and it did not cover Sesay's civilian complaint against Heinz.

On May 18, 2000, after the close of the evidence, the District Court granted a motion for judgment of acquittal on count three (possession of a firearm during a drug trafficking offense). On May 22, 2000, the jury returned guilty verdicts on the two remaining counts of possession with intent to distribute crack cocaine and possession of a firearm by a convicted felon. On September 21, 2000, the trial judge sentenced appellant to 63 months' imprisonment on each count, to be served concurrently, a $1,000 fine, a $200 special assessment, and three years of supervised release. No timely notice of appeal was filed. However, on August 2, 2001, the District Court granted appellant's motion to reissue the judgment, and the judgment was reissued and entered on August 7,

2001. A timely notice of appeal was thereafter filed on August 15, 2001.

## II. ANALYSIS

### A. Evidence of the Complaint

Appellant first argues that the District Court erred in depriving him of his rights to confront witnesses and to present a defense when it excluded evidence that he had a pre-existing civilian complaint against Heinz. He argues that the defense should have been permitted to cross-examine the police witnesses concerning their knowledge of appellant's complaint against Officer Heinz, and that the defense should have been allowed to introduce the complaint as substantive evidence of Officer Heinz's motive to plant contraband in the coat. Appellant's arguments have some merit. The objections ultimately fail, however, because appellant has not shown that the District Court's evidentiary exclusions resulted in "plain error."

#### 1. Examination of the Other Officers

■ When the District Court issued its pretrial rulings, they had a legitimate basis. There was no indication during any of the pretrial proceedings that any of the other testifying officers worked closely with Officer Heinz. Therefore, there was no proper foundation for the line of inquiry that defense counsel sought to pursue. However, during trial it became apparent that the police witnesses who testified against appellant all worked on the same shift with Officer Heinz in the Third District. Officer Taggart, for example, testified that he had been working with Officer Heinz on the midnight shift for three or four years. 5/16/00 Tr. 78. Officer Heinz testified that he spoke with Officers Larsen and Johnson "every night." 5/17/00 Tr. 55. This evidence indicated a close relationship between Officer Heinz and the testifying officers. Once this became clear, there was good reason to allow defense counsel to question the witnesses about their knowledge of appellant's complaint against Officer Heinz.

However, the defense did not renew its request to question the officers to determine whether, in light of the evidence indicating a close relationship between Heinz and the other officers, the District Court still meant to prevent defense counsel from questioning these other officers about their relationship with Officer Heinz and their knowledge of the civilian complaint that Sesay had filed against Officer Heinz. Thus, any error resulting from the exclusion of the evidence must be reviewed under the "plain error" standard. *See* FED.R.CRIM.P. 52(b). *See also United States v. Arrington*, 309 F.3d 40, at 47, 2002 U.S.App. LEXIS 22993, at *18 (D.C.Cir.2002) ("Because [the defendant] did not object to the court's instruction at trial, we review this complaint solely to determine whether the district court committed plain error."); *In re Sealed Case*, 283 F.3d 349, 352 (D.C.Cir.2002) ("If the defendant allows an alleged error to pass without objection ... he then assumes the burden of meeting the more exacting plain error requirement of Rule 52(b). ...").

The Supreme Court has articulated the plain error requirements of Rule 52(b), as follows:

> There must be an "error" that is "plain" and that "affect[s] substantial rights." Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985));

*see also Johnson v. United States,* 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.") (internal quotations omitted). *Olano* further explained that, for the plain error standard to affect substantial rights,

> the error must have been prejudicial: It must have affected the outcome of the district court proceedings.... When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record – a so-called "harmless error" inquiry – to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.

*Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

On the record in this case, we cannot find "prejudice," nor can we find that the alleged errors "seriously affect the fairness, integrity or public reputation of judicial proceedings." We simply cannot say that the alleged error "affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Therefore, defendant has not carried the burden of persuasion necessary to prevail under Rule 52(b).

Furthermore, lest there be any confusion on this point, defense counsel was not entirely foreclosed from advancing appellant's defense. For example, counsel could have asked the officers about the timing of events at the hospital, including when they first came to learn that the coat in the car belonged to appellant. This would have made clear whether the officers had reason to know that the coat belonged to Sesay *before* they searched it, and possibly supported appellant's view that the officers had time and knowledge sufficient to plant the gun so as to implicate Sesay. Counsel also could have sought permission to conduct *voir dire* of the police witnesses outside the jury's presence, after Officer Taggart testified that he had worked on the midnight shift with Officer Heinz for three or four years, or after it became apparent that the Government was not going to call Officer Heinz as a witness. We have no way of knowing whether defense counsel made strategic decisions not to pursue these lines of inquiry or mistakenly assumed that he could not renew his request to examine the officers in light of the newly uncovered facts about Heinz's relationship with the other officers. In any event, there is no plain error.

### 2. *Substantive Evidence*

■ There may also have been error, albeit not "plain error," resulting from the exclusion of appellant's civilian complaint against Heinz as substantive evidence of bias. There were grounds for admitting the evidence of the complaint substantively, for it suggested animosity between appellant and Officer Heinz. This animosity, in turn, might have given credence to appellant's claim that the police planted the gun and drugs to implicate him. However, when the District Court ruled that the defense could not call Officer Heinz merely to impeach him, appellant never asked to use Officer Heinz to introduce the complaint as substantive evidence of bias. Appellant claims that "[i]t was clear to all concerned below that this was one of the purposes for which defense counsel wanted to use the complaint," Appellant's Reply Br. at 9, but the record does not support

this assertion. Thus, we also review the exclusion of the complaint only for plain error. *See* FED.R.CRIM.P. 52(b). It is true that the civilian complaint raises a question of bias, but, following the standard enunciated in *Olano*, we cannot find that defendant has satisfied his burden of proving that the alleged error affected the outcome of the trial. Therefore, appellant has not satisfied his burden of persuasion.

## B. Police Report Statements

■ Appellant also argues that the District Court abused its discretion in excluding as hearsay a statement from a police report that witnesses at the scene of the shooting saw the victim, not appellant, with the gun. The District Court properly excluded this evidence as hearsay.

At the pretrial conference, defense counsel complained that the Government had not provided *Brady* information that had been requested regarding the identity of witnesses who had observed someone other than appellant with a gun. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The request had been made on the basis of a police report that had been provided through discovery, which indicated that witnesses at the scene of the shooting had observed the gunshot victim holding a gun during or immediately following the shooting. The Government's counsel replied that, after speaking to each individual officer and all of the detectives, reviewing the paperwork, and speaking with Government witnesses, it appeared that the statement had been only a rumor: No witness had actually made this claim. The defense counsel pointed out that the PD 163 written by Officer Heinz identified Defendant 1 as appellant and Defendant 2 as Coates, and that it stated that "witnesses at the scene of the shooting observed Def #2 with a gun in his hand during and/or just after the shoot-

ing." The Government replied that it believed that Officer Heinz had simply gotten his numbers mixed up. The District Court denied the defense's request.

At trial, defense counsel attempted to direct Officer Heinz's attention to the back of the PD 163, where it was written that "Def #2" had been observed with the gun. The Government objected on the grounds that this issue was covered by the District Court's pretrial ruling. When defense counsel brought up Officer Heinz's preliminary hearing testimony that he had received information from Detective Voysest that there was a witness to Coates possessing the firearm, the Government objected that the information was double hearsay and, again, that the information had been determined to be incorrect. The defense counsel replied that he was offering the statement not to prove its truth, but

> based upon the fact that this was the state of the investigation at the time of the precipitation of this document. This was the information upon which the Metropolitan Police Department acted, similar to the Government's representations earlier on with respect to the radio run and why individuals go to a certain scene.

5/17/00 Tr. 60. The District Court sustained the Government's objection, and the defense did not call Detective Voysest.

■ Appellant now challenges these evidentiary rulings. We review the District Court's evidentiary rulings for abuse of discretion, *United States v. Warren*, 42 F.3d 647, 655 (D.C.Cir.1994), and conclude that the District Court did not abuse its discretion in this case.

■ The Federal Rules of Evidence provide that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c). Hearsay is generally inadmissible as evidence. FED.R.EVID. 802. However, "[a]n out-of court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c)." *United States v. Thompson,* 279 F.3d 1043, 1047 (D.C.Cir.2002); *see also United States v. Wright,* 783 F.2d 1091, 1098 (D.C.Cir.1986).

Appellant contends that the witness statements were not hearsay because they were offered to show the effect on the hearer's state of mind. He argues that

it was not the witnesses' statements that were relevant alone, but the disavowal of the statements that made them relevant by showing that, in the face of *contrary* information they had originally considered reliable enough to act upon, the police took action harmful to appellant by disavowing the statements inculpating the co-defendant and dismissing the case against him.

Appellant's Reply Br. at 14.

We rejected a similar claim in *United States v. Evans,* 216 F.3d 80 (D.C.Cir. 2000), *cert. denied,* 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed.2d 317 (2000). There, the trial court had permitted the Government to introduce the testimony of an FBI agent that the FBI " 'had received ... information that [the defendant] was involved in drug trafficking.' " *Id.* at 85 (quoting agent's testimony; ellipsis in original). This information had come from a government informant who was not a witness and would not be available for cross-examination. The Government argued that the statement was not hearsay because it was not offered for its truth, but rather to establish why the FBI "did what they did." *Id.* The court rejected this contention:

But if [the agent's] testimony about the FBI's "information" did not go to the

truth of that assertion, to what did it go? The trial prosecutor said he offered the testimony to establish "why they did what they did with George Rose." For testimony to be admissible for any purpose, however, it must be relevant. *See* FED.R.EVID. 402. And to be relevant, it must have a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. How was "why they did what they did with George Rose" related to such a fact of consequence?

*Id.* at 85. The court concluded that

the admission of [the agent's] testimony was error under the Federal Rules of Evidence: under Rules 801 and 802 because the jury was effectively told that the testimony could be used for its truth, and under Rule 403 because the probative value of the only relevant nonhearsay purpose—general background—was substantially outweighed by the danger of unfair prejudice.

*Id.* at 89. Likewise, in this case, the statement in the PD 163 that "witnesses at the scene of the shooting observed Def #2 with a gun in his hand during and/or just after the shooting" is not relevant for anything other than its truth. And if it has any relevance as "background," the probative value was substantially outweighed by the danger of prejudice.

Appellant argues that the statement at issue here was offered to show the state of mind of the officers when they arrested Fowler, Coates, and appellant. The "state of mind" to which appellant refers is "that the police understood there to be witnesses who saw the victim with the gun immediately after the shooting." Appellant's Br. at 32. However, this "state of mind," if not based on the truth of the statement, is not relevant to a fact of

consequence in the trial. The only real issue at trial was who possessed the gun and drugs. The statement in the PD 163 was only relevant to this issue if it was accurate. If, as the Government asserted, the statement reflected a mistaken rumor, then it would not have assisted the jury in determining who possessed the gun and drugs. To accept appellant's "state of mind" argument would be to permit a loophole in the hearsay rule large enough to swallow the rule itself. *See Evans*, 216 F.3d at 86 ("If we were to accept the government's rationale here, then explaining why government agents 'did what they did' through reference to statements of absent informants would be acceptable in almost any case involving an undercover operation, and in many others as well.").

Appellant also argues that the statement "was critical to the defense to persuade the jury that the police had lied and manipulated the evidence in a manner designed to strengthen the case against appellant." Appellant's Br. at 32. This argument clearly relies on the truth of the statement. If the statement was not offered for its truth, it would not "persuade the jury that the police had lied and manipulated the evidence."

### III. Conclusion

The judgment of the District Court is hereby affirmed.