Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued January 13, 2004          Decided February 24, 2004

No. 03-3006

UNITED STATES OF AMERICA,
APPELLEE

v.

ADRIAN D. WILLIAMS,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00404-01)

————

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant.  With her on the briefs was *A. J. Kramer*, Federal Public Defender.  *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Roscoe C. Howard*,

————

Bills of costs must be filed within 14 days after entry of judgment.  The court looks with disfavor upon motions to file bills of costs out of time.

*Jr.*, U.S. Attorney, and *John R. Fisher*, *Elizabeth Trosman*, and *Susan B. Menzer*, Assistant U.S. Attorneys.

Before: EDWARDS and ROBERTS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Appellant Adrian Williams was convicted under 18 U.S.C. § 922(g)(1) of unlawful possession of a firearm and ammunition by a convicted felon. At Williams' trial, police officers testified that they apprehended Williams on the basis of information furnished by non-testifying individuals that Williams had robbed them at gunpoint earlier in the evening. Despite repeated opportunities to do so, Williams' trial attorney never objected to the admission of these out-of-court statements. In this appeal, Williams seeks a new trial on the grounds that, because of his trial attorney's failure to object to the officers' testimony, he was deprived of effective assistance of counsel. Williams alternatively seeks a remand of his case for resentencing, alleging that the District Court erred in calculating his base offense level under the governing sentencing guideline and that his attorney again provided ineffective assistance by failing to contest this error.

We agree with Williams that the officers' testimony should not have been admitted. On the record at hand, however, we cannot determine conclusively whether defense counsel's performance was constitutionally ineffective. We therefore remand the case to the District Court for an evidentiary hearing on that issue. If the District Court finds that Williams indeed was denied effective assistance of counsel, Williams will be entitled to a new trial.

We find no merit in Williams' challenges to his sentence. Although the District Court erred in increasing Williams' base offense level without first ascertaining whether Williams' previous conviction amounted to a "crime of violence" within the meaning of the sentencing guidelines, Williams has failed to demonstrate sufficient prejudice to constitute plain error or ineffective assistance. Therefore, if his conviction is ultimately sustained on the basis of the verdict now on appeal, then his sentence will stand.

## I. Background

The events leading to Williams' arrest and conviction are largely undisputed. On the evening of October 13, 2001, officers of the Metropolitan Police Department were dispatched in large numbers to monitor crowds that had assembled for homecoming events at Howard University in Northwest Washington. Around 10:00 p.m., Officers Wayne David and Keith Gilbert were approached by two men who reported that they had been robbed at gunpoint earlier in the evening. The complaining witnesses informed the officers that they had just seen the men who robbed them in the 700 block of Euclid Street, but had not approached because they believed their assailants to be armed. Officer Gilbert set off on foot in search of the suspects, while Officer David and Officer Kevin Rachlin, accompanied by the complaining witnesses, drove in an unmarked car in search of individuals matching the descriptions of the robbers.

As Officers David and Rachlin proceeded north toward the intersection of Sherman Avenue and Euclid Street, they observed a group of men cross the street ahead of their police cruiser. Appellant Adrian Williams was among this group. One of the complaining witnesses, who was in the vehicle with the officers, identified "one of them right there" as a participant in the robbery. Trial Tr. at 58 (9/25/02). The officers accordingly exited their vehicle and ordered the suspects to stop. Williams ran. While other officers detained the other suspects, Officer David pursued Williams in the police cruiser. As Williams rounded the corner from Euclid Street to 9th Street, Officer David observed him make a tossing motion toward a grassy lot. The pursuit continued until Williams was apprehended by other officers who had been called to the scene.

After Williams was detained, Officer David returned to the grassy lot at the corner of Euclid and 9th Streets, where he discovered a loaded .380 caliber semiautomatic handgun. Crime scene investigators arrived at the scene to recover the weapon. Although there were several other items and debris in the grassy lot, investigators did not recover anything other

than the handgun. The gun was subsequently test-fired and found to be operational. Forensic investigators found no DNA or fingerprints on the gun.

Williams was indicted on November 15, 2001, for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Although there is no clear indication on the record before us, Williams contends – and the Government does not dispute – that Williams was never charged in connection with the armed robbery that allegedly occurred on the night of October 13.

Williams' first trial began on June 3, 2002. The District Court declared a mistrial on June 7, 2002, after the jury failed to reach a unanimous verdict. A second trial was held on September 25, 2002. The Government's evidence consisted primarily of the testimony of three police officers. Officers Kevin Rachlin and Keith Gilbert described the background context of the alleged robbery and subsequent investigation. Neither had seen Williams with a gun, and neither was with Officer David when he saw Williams toss an object into the grassy lot. Officer David testified as to his pursuit of Williams, stating that he had observed Williams toss an object from the area of his waistband into the grassy lot. He acknowledged that he had not seen what the object was, and he could not describe its size or color. The Government also introduced expert testimony to the effect that it was difficult to recover a useful fingerprint from a gun and that the absence of any fingerprints on the gun recovered on October 13 was not unusual.

Williams introduced no evidence in his defense, though his attorney attempted to impeach the Government's witnesses with prior inconsistent statements. The parties stipulated that Williams previously had been convicted of a felony punishable by a term of imprisonment exceeding one year and that the firearm had traveled in interstate commerce. The parties also stipulated that no DNA was detected on the gun or ammunition and that it was generally rare for DNA to be found on firearms.

Of particular relevance to this appeal, the prosecution and defense stipulated at a hearing prior to Williams' first trial that the Government would not introduce any evidence that the robbery being investigated when Williams was apprehended took place at gunpoint. *See* Hearing Tr. at 16-17 (5/30/02). The parties agreed that the police officers would testify that they were in the area investigating "a robbery but not a robbery with a gun." *Id.* at 16. The officers' testimony adhered to this agreement at the first trial, which ended in mistrial after the jury failed to reach a unanimous verdict. At the second trial, however, the officers repeatedly stated that Williams and the other suspects were detained on suspicion of *armed* robbery. For example, Officer Rachlin testified that he became involved in the case when other officers "asked for our help in a rash of armed robberies that had just occurred." Trial Tr. at 21 (9/25/02). When he and the other officers encountered Williams and the other individuals during their investigation of that armed robbery, "one of the witnesses . . . stated that was the suspect." *Id.* at 25. Officer Rachlin further explained that he "centered on" a second individual in the group, rather than Williams, because "[w]e were told that all the suspects in this were armed." *Id.* at 26.

Similarly, Officer Gilbert testified that the complaining witnesses had informed the officers that they had just seen their assailants, but that they "didn't want to approach them because all of them had guns." *Id.* at 35. He further testified that he and the other officers decided they needed "a group of officers to help us" because "they said it was multiple guns, multiple people – they said it was multiple guns, multiple suspects with guns." *Id.* at 36. While Officer David refrained from referring to the robbery suspects as "armed," his testimony on cross-examination confirmed that Williams and the individuals accompanying him all matched the complaining witnesses' description of their assailants. *See id.* at 77. Finally, in her rebuttal argument, the prosecutor reminded the jury that the investigating officers believed the suspects to be "armed and dangerous." *Id.* at 148. At no point did defense counsel ever object to any of these statements.

The jury returned a guilty verdict at the conclusion of Williams' second trial. Williams was sentenced on January 13, 2003. A pre-sentence report ("PSR") calculated Williams' sentence under § 2K2.1 of the U.S. Sentencing Guidelines. Under § 2K2.1, Williams' initial base offense level for a violation of 18 U.S.C. § 922(g)(1) was 14. Under § 2K2.1(a)(4)(A), Williams' offense level would increase to 20 if Williams had one prior felony conviction for a "crime of violence." Williams previously had been convicted of "robbery," although the PSR indicated that no documents or other details concerning the robbery conviction were available. The Government asserts in its brief before this court that this conviction occurred when Williams pled guilty in 1994 to robbing another person at knife point. *See* Br. for Appellee at 13 n.8. Although this information did not appear in the PSR or elsewhere on the record before the District Court, Williams does not dispute the Government's characterization of his previous conviction.

Despite the absence of any facts concerning the prior conviction, the PSR recommended a base offense level of 20. Given Williams' criminal history category, the corresponding guideline range for this offense level was 51 to 63 months. Upon receipt of the PSR, Williams' trial attorney submitted three factual corrections but otherwise lodged no objections. The District Court adopted the findings and recommendations of the PSR and sentenced Williams to 63 months in prison, to be followed by three years' supervised release and a special assessment of $100. This appeal followed.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel at Trial

Williams contends that the police officers' testimony that non-testifying complaining witnesses claimed that they had been robbed at gunpoint amounted to inadmissible hearsay evidence. Although he does not argue that the District Court erred in failing to exclude this evidence *sua sponte*, Williams does claim that his trial attorney's failure to object to its admission constituted ineffective assistance of counsel and

that he is therefore entitled to a new trial. We agree with Williams that the testimony was inadmissible and should have been excluded upon objection. However, the record before us does not establish conclusively whether defense counsel's performance was unconstitutionally deficient or prejudicial. We therefore follow our general practice and remand the case for an evidentiary hearing on that issue. *See United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003). If the District Court finds that Williams received ineffective assistance of counsel, Williams must be afforded a new trial.

The Sixth Amendment right to counsel " 'is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). We analyze Williams' ineffective assistance claim under the two-step analysis set forth by the Supreme Court in *Strickland*. Williams must demonstrate first that his trial attorney's performance was deficient. *Id.* at 687. The standard for attorney performance is "reasonably effective assistance," or "reasonableness under prevailing professional norms." *Id.* at 687, 688. These professional norms require that an attorney " 'inform[ ] himself . . . fully on the facts and the law.' " *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting *ABA Standards for Criminal Justice* 4-3.8, 4-5.1(a) (2d ed. 1980)); *see also United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997). Because trial counsel must have "wide latitude . . . in making tactical decisions," *Strickland*, 466 U.S. at 689, a reviewing court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690.

Under the second step of the *Strickland* analysis, Williams must show that his attorney's deficient performance prejudiced the outcome of his case; that is, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a challenge to a criminal conviction, this standard requires an appellant to demonstrate that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt." *Id.* at 695. Williams need *not* show that his attorney's deficient performance "more likely than not" altered the outcome of the case. *Id.* at 693. As this court has emphasized, "*Strickland* requires *reasonable probability*, not certainty." *Gaviria*, 116 F.3d at 1514 (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Where an appellant argues for the first time on direct appeal that trial counsel's performance was constitutionally ineffective, our general practice is to remand the case to the district court for an evidentiary hearing. *See Rashad*, 331 F.3d at 909-10 (citing *United States v. Fennell*, 53 F.3d 1296, 1303-04 (D.C. Cir. 1995)). We will not remand a case, however, if the record conclusively establishes appellant's entitlement to relief. *See id.* at 910.

In this case, Williams argues that he was denied the effective assistance of counsel when his trial attorney repeatedly failed to object to the disputed testimony at his second trial – testimony that the parties had agreed would not be admitted and that was legally inadmissible as hearsay. There is no doubt that the police officers' repeated references to *armed* robbery at the second trial constituted a clear breach of the parties' pre-trial agreement. The same attorneys participated in Williams' second trial as in the first trial, and the Government does not claim that the parties' agreement had been rescinded or altered in any way between the first and second trials. Nevertheless, the evidence that Williams was suspected of armed robbery came into the record in various forms repeatedly throughout the second trial. We agree with Williams that the testimony was inadmissible.

As a general matter, the Federal Rules of Evidence prohibit the admission of an out-of-court statement offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801, 802. Such a statement may be admitted to serve a non-hearsay purpose, however, such as elucidating a speaker's or a listener's state of mind, *see United States v. Sesay*,

313 F.3d 591, 599 (D.C. Cir. 2002), or providing background information, *see United States v. Gatling*, 96 F.3d 1511, 1524 (D.C. Cir. 1996). As with all evidence, such a statement, when offered for a permissible non-hearsay purpose, must be relevant to a "fact . . . of consequence" in the case. FED. R. EVID. 401; *see also Sesay*, 313 F.3d at 599-600; *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000). Moreover, such a statement may be excluded, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403; *see also Evans*, 216 F.3d at 87-89.

This court had occasion to consider a similar hearsay issue in *United States v. Evans*, 216 F.3d 80 (D.C. Cir.), *cert. denied*, 531 U.S. 971 (2000). In that case, a government witness testified regarding the origins of an FBI undercover operation. *Id.* at 84. In recounting why the FBI was investigating the defendant, the witness stated that the FBI had learned from an informant that the defendant was involved in drug trafficking. *Id.* This court held that the testimony constituted inadmissible hearsay, reasoning that the testimony was relevant only if offered to prove the truth of the matter asserted. *See id.* at 85. The *Evans* court rejected the argument that the testimony could be admitted to provide "background" information, because whatever minimal value the testimony had for that purpose was outweighed by the danger that the jury would consider the evidence for its hearsay purpose. *See id.* at 87-89; *see also Sesay*, 313 F.3d at 599 (excluding testimony regarding an out-of-court statement because its only relevance was for its truth and because any value it may have had as background was substantially outweighed by the danger of prejudice).

Under *Evans*, the officers' testimony at Williams' second trial was inadmissible. To the extent that the testimony was relevant to a fact of consequence in the trial – whether Williams possessed a gun – the testimony is hearsay because it is relevant only for its truth, *i.e.*, that Williams possessed a gun earlier in the evening during the commission of an armed robbery. *See Evans*, 216 F.3d at 85; *see also Sesay*, 313 F.3d at 599. To the extent that the testimony was offered as

"background" information, the testimony is inadmissible because its considerable prejudicial effect substantially outweighed its minimal value as background. *See Evans*, 216 F.3d at 87-89; *see also Sesay*, 313 F.3d at 599. The prosecution easily could have explained the context of the events of October 13 without referring to the robbery suspects as armed; indeed, the prosecutor expressly agreed to do so prior to the first trial. The Government attempts to distinguish *Evans* on the grounds that the officers' testimony in this case did not single out Williams as the sole suspect in the armed robbery. This argument fails because, even if there were additional suspects, the officers clearly testified that *all* the suspects were considered to be armed on the basis of the complaining witnesses' statements. *See, e.g.*, Trial Tr. at 26, 35, 36.

The Government's reliance on *United States v. Gatling*, 96 F.3d 1511 (D.C. Cir. 1996), and similar cases is misplaced. Those cases permitted the admission of hearsay testimony for background purposes in situations where that testimony could not reasonably be seen to prejudice the defendant. *See id.* at 1524 (finding the hearsay testimony to be "harmlessly cumulative"); *United States v. Beck*, 122 F.3d 676, 682 (8th Cir. 1997) (finding any possible error in admitting the hearsay to be harmless). Indeed, the *Evans* court specifically distinguished *Gatling* as a case where hearsay was admissible for background purposes only "where the evidence [was] on an uncontroverted matter, where hearsay [was] the most efficient means of transmitting it, and where there [was] little chance of prejudice to the defendant." *Evans*, 216 F.3d at 87. Where those conditions are not met, "the government must prove 'background' the same way it would any other set of relevant facts," *i.e.*, without the use of hearsay testimony. *Id.* The police officers' testimony at Williams' second trial was therefore inadmissible under *Evans*.

Unlike *Gatling*, the officers' testimony in this case presented a clear danger of prejudice to Williams' defense. Aside from Officer David's observation of Williams tossing an unidentified object into the grassy lot, there was no evidence connecting Williams to the handgun. At Williams' first trial,

the jury could not reach a unanimous verdict on the strength of this evidence. It was only at the second trial that the Government's case, bolstered by the inadmissible statements implicating Williams in *armed* robbery, persuaded the jury beyond a reasonable doubt that Williams indeed possessed the handgun. Yet, despite the obviously damaging nature of these statements, and despite having multiple opportunities to do so, defense counsel never objected or took any other steps to prevent the admission of this testimony. Nor did she take any steps to mitigate its effect once it came into the record.

On remand, the District Court must consider whether there is any plausible explanation for defense counsel's continued failure to object to the inadmissible testimony. We will leave this issue for the District Court to address in the first instance on remand. It is clear that defense counsel should have been aware of the rules of hearsay generally and of the *Evans* decision in particular. *See Gaviria*, 116 F.3d at 1512 (finding *Strickland*'s first prong satisfied where the defendant's attorney "should have been aware" of a recent decision and its implications for the defendant's case). If, after further development of the record, the District Court finds that the attorney's failure to object reflected ignorance of the law, rather than a *reasonable* strategic decision within "the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, then the attorney's performance must be deemed deficient, and Williams will have satisfied the first element of the *Strickland* analysis.

With respect to *Strickland*'s prejudice requirement, the record before us suggests that trial counsel's failure to object was prejudicial to Williams' defense. However, it is for the District Court to develop the record further and determine in the first instance whether the admission of this evidence was sufficiently prejudicial as to "undermine confidence in the outcome" of Williams' trial. *Strickland*, 466 U.S. at 694.

We therefore remand Williams' case for an evidentiary hearing on the effectiveness of his trial attorney. If the District Court determines that Williams' trial counsel was

ineffective under *Strickland*, Williams must be afforded a new trial.

## B. Sentencing Issues

Williams further contends that the District Court erred in calculating his base offense level under the Sentencing Guidelines and that his attorney was constitutionally ineffective by failing to object to this error. We find no merit in these claims. Although the District Court clearly erred by increasing Williams' base offense level without first ascertaining whether Williams' previous conviction of robbery constituted a "crime of violence" within the meaning of the Sentencing Guidelines, Williams fails to demonstrate sufficient prejudice to satisfy either the plain error or ineffective assistance standard.

A conviction under 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm or ammunition by a convicted felon is sentenced pursuant to § 2K2.1 of the Sentencing Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") app. A (2001). Because Williams is a "prohibited person" under 18 U.S.C. § 922(g) by virtue of his prior felony conviction, his base offense level should be at least 14 under § 2K2.1(a)(6) of the Guidelines. Section 2K2.1(a)(4)(A), however, calls for a base offense level of 20 if the defendant previously had sustained one felony conviction for a "crime of violence." U.S.S.G. § 2K2.1(a)(4)(A) (2001). For purposes of this Guideline, "crime of violence" is defined in accordance with § 4B1.2(a) and the accompanying application notes. *See* U.S.S.G. § 2K2.1, cmt. n.5 (2001). Under § 4B1.2(a), the term "crime of violence" means

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2001). The corresponding application note states that "crime of violence" includes, *inter alia*, "robbery." U.S.S.G. § 4B1.2, cmt. n.1 (2001).

This court held in *United States v. Mathis*, 963 F.2d 399 (D.C. Cir. 1992), that the statutory definition of "robbery" under District of Columbia law includes offenses that do not have as an element the use or threatened use of physical force against another person. *Id.* at 408-09. A conviction of "robbery" therefore does not automatically constitute a "violent felony" for purposes of the sentence enhancement provision in 18 U.S.C. § 924(e). *See id.* at 409 (discussing *Taylor v. United States*, 495 U.S. 575 (1990)). In *United States v. Hill*, 131 F.3d 1056 (D.C. Cir. 1997), the court extended this holding to the definition of "crime of violence" under § 2K2.1(a) of the Guidelines. *Id.* at 1061-65.

To determine whether a prior conviction constitutes a "crime of violence," the sentencing court must consider the statutory definition of the offense of conviction, and not the particular circumstances under which that offense was committed. *Id.* at 1062 (citing *Taylor*, 495 U.S. at 600-02). As in *Mathis*, *Hill* held that where the statutory definition of an offense includes non-violent crimes, a sentencing court must review the indictment or jury instructions to determine whether a prior conviction was a "crime of violence" within the meaning of the Guidelines. *See id.* In the special case where a defendant pleads guilty to a lesser included offense rather than the indicted offense, and where no jury instructions are available, a sentencing court must examine other documents in the record, such as the judgment of conviction, the plea agreement or other statement by the defendant on the record, a presentence report adopted by the court, or the factual findings of the sentencing judge. *See id.* at 1064-65.

In this case, Williams' PSR indicates that Williams was convicted of "robbery" in the District of Columbia Superior Court in 1994, an offense for which he received a sentence of 30 to 90 months. No other information about this conviction appears on the record before us, save for the representations made by the parties in their briefs and at oral argument.

Nevertheless, the PSR recommended, and the District Court agreed, that Williams' base offense level under § 2K2.1 of the Guidelines should be 20. Had the District Court examined the record and found no evidence that Williams' previous conviction constituted a "crime of violence," his base offense level would have been only 14, resulting in a sentence range of 27 to 33 months, instead of the 51 to 63 months that the PSR recommended and the District Court adopted.

Under *Hill* and *Mathis*, the District Court clearly erred in adopting the base offense level of 20 without confirming that Williams' 1994 robbery conviction constituted a "crime of violence." Williams did not object to this error, however, either upon receipt of the PSR or at sentencing before the District Court. We therefore review the sentencing judge's decision only for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Joaquin*, 326 F.3d 1287, 1290 (D.C. Cir. 2003). We find that Williams has failed to demonstrate the prejudice necessary to satisfy plain error review.

In the context of sentencing errors, the prejudice requirement under the plain error standard is "slightly less exacting than it is in the context of trial errors." *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994). Nonetheless, a defendant must still demonstrate "a reasonable likelihood that the sentencing court's obvious errors affected his sentence." *Id.* at 288. Williams cannot prevail, even under the relaxed prejudice standard, merely by asserting that there was error. Rather, the burden remains squarely on Williams to provide the court with some basis for suspecting that a reduction in his sentence is sufficiently likely to justify a remand. *See id.* at 292. Our cases do not require Williams to proffer new evidence establishing conclusively that his sentence would be different absent the sentencing court's error; he need not even demonstrate that it is "more likely than not" that his sentence will change. *See id.* But he must offer some reason to suspect that the District Court's error likely resulted in an incorrect sentence. *See United States v. Childress*, 58 F.3d 693, 724 (D.C. Cir. 1995) ("Under *Saro*, plain error can be established where the trial court fails to make the requisite findings *and* it is reasonably likely that it

would have made a different attribution if it had made the proper findings.") (emphasis added). Williams fails to carry this burden.

There is simply nothing before us to suggest any likelihood that the District Court would have assigned Williams a different base offense level had it first conducted the proper inquiry into the 1994 robbery conviction. To the contrary, the only indications on this sparse record – including the briefs to this court and the parties' representations at oral argument – suggest that, in fact, Williams' sentence would *not* be reduced. Thus, we cannot say that Williams has satisfied his burden of demonstrating a "reasonable likelihood" that the District Court's error affected his sentence. *Saro*, 24 F.3d at 288.

For the same reason, Williams fails to satisfy the prejudice requirement of *Strickland*'s ineffective assistance analysis. *See id.* at 287 (noting the "natural analogy" between claims of plain error and claims of ineffective assistance and stating that "the *Strickland* formulation of 'prejudice' comes quite close to what we have required in plain-error cases"); *see also United States v. Hall*, 326 F.3d 1295, 1301 & n.10 (D.C. Cir. 2003) (relying on the same prejudice analysis to reject both plain error and ineffective assistance claims concerning an alleged sentencing error). Even assuming *arguendo* that Williams' attorney erred in failing to object to the base offense level, such error does not amount to ineffective assistance of counsel where Williams has failed to present any reason why that error should "undermine [our] confidence in the outcome" of his sentencing proceeding. *Strickland*, 466 U.S. at 694.

### III. CONCLUSION

We remand Williams' case to the District Court for an evidentiary hearing on the question of whether Williams was denied the effective assistance of counsel when his trial attorney failed to object to the admission of damaging hearsay testimony. Should the District Court find that Williams

satisfies the requirements of an ineffective assistance claim, Williams will be entitled to a new trial.

We find no merit in Williams' challenge to his sentence. Therefore, if his conviction is ultimately sustained on the basis of his second trial, then his sentence will stand.