NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3070
_____

UNITED STATES OF AMERICA

v.

ANTHONY WAYNE RANSOM,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cr-798)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
September 25, 2012

Before:  McKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: October 25, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Anthony Ransom appeals a judgment of the United States District Court for the

Eastern District of Pennsylvania sentencing him to 163 months' imprisonment and 3

years' supervised release based upon his convictions for four counts of bank robbery.

Although, through counsel, he represented to the District Court that he "technically

1

qualif[ied] as [a] career offender" under § 4B1.1 of the United States Sentencing Guidelines (Joint App. at 61), he now seeks to set aside his sentence on the ground that the Court erred in sentencing him as such. He also contends that the District Court's judgment should be vacated because the Court failed to rule on his pro se motion for a sentencing departure. For the reasons that follow, we will vacate the District Court's judgment of sentence and remand for a ruling on Ransom's departure motion.

## I.      Background

Ransom pled guilty to robbing four federally insured banks in the Philadelphia area, in violation of 18 U.S.C. § 2113(a). In anticipation of sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") calculating Ransom's total offense level to be 29, based, in part, on Ransom's designation as a "career offender" under § 4B1.1 of the Guidelines. The PSR concluded that Ransom qualified as a career offender because he had pled guilty to a federal bank robbery charge in 2004, and to a charge of simple assault under Pennsylvania law in 2003.[1] While the PSR determined that the career offender determination did not impact Ransom's criminal history level of VI, it showed that Ransom's total offense level would have been 25 absent application of § 4B1.1. Thus, the conclusion that Ransom was a career offender

---

[1] With respect to the simple assault conviction, the PSR stated that the criminal complaint against Ransom said that he entered the victim's home, punched the victim in the face, pointed a gun at him, and bit his shoulder. At sentencing, however, Ransom claimed that the "simple assault was … a fight," and that there "was no gun involved, … ." (Joint App. at 64.)

2

increased his advisory sentencing range from 110-137 months' imprisonment to 151-188 months' imprisonment. *See* U.S.S.G. ch. 5, Pt. A (sentencing table).

Despite that increase, Ransom filed no objections to the PSR. And, when a sentencing memorandum was submitted on his behalf, it expressly acknowledged that he was a career offender, though it pressed for a variance on the ground that the simple assault conviction that played a role in triggering § 4B1.1's application resulted in a Guidelines range that was not commensurate with his criminal history.

Indeed, while Ransom acknowledged that he was "considered a career offender pursuant to … § 4B1.1," he implored the Court to recognize that the simple assault conviction was "crucial in raising his sentencing guideline range from 110-137 months up to 151-188 months" and that a lower sentence should be imposed because his record was not as serious "in comparison to [those] of most individuals who have attained career offender status." (Joint App. at 51-52.) Ransom's attorney expanded on that contention at sentencing, again explaining that while Ransom "technically qualif[ied] as [a] career offender," the simple assault was a mere "fight between two individuals who knew each other" and so should not be used to sentence him in the range that an application of § 4B1.1 would counsel. (*Id.* at 61.) He therefore asked that the Court vary below the "applicable Guideline range for career offender status" by imposing a sentence "in between what the Guidelines [would be] if he was not technically a career offender and the career offender Guidelines." (*Id.* at 62.)

Ransom's attorney then handed the District Court "a copy of [a] letter that Mr. Ransom" had written which Ransom's attorney mistakenly believed to have already been

3

submitted directly to the Court. (*Id.* at 63.) Upon reading the letter,[2] the Court stated, "I see we have a motion for a downward departure based on extraordinary confinement of a Federal inmate in a non-Federal … pretrial institution." (*Id.*) Defense counsel responded, "[y]es … I had discussed that with my client and I had told him about how unsuccessful those motions have been in the past," further noting that Ransom "had been out at Delaware County Prison … during th[e] presentence period and the reports of the conditions out there are not as good as the reports of conditions at the Federal Detention Center … ." (*Id.*) The District Court responded, "[a]ll right. Thank you" (*id.*), and the issue of Ransom's pretrial confinement was not addressed by the Court or the parties again.

Eventually, after hearing from Ransom directly, the District Court imposed a sentence of 163 months' imprisonment and 3 years' supervised release, and ordered Ransom to pay restitution in the amount of $8,385. This timely appeal followed.

## II.    Discussion[3]

Ransom argues that the District Court errantly sentenced him as a career offender, because his Pennsylvania simple assault conviction does not qualify as a crime of violence. He also contends that the District Court committed procedural error by failing to formally rule on his pro se letter-motion for a downward departure. We address those arguments in turn.

---

[2] We do not cite the letter because, as Ransom acknowledges, the letter was never made a part of the record.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

4

A.    *Applicability of § 4B1.1*

Ransom first argues that the District Court incorrectly sentenced him as a career offender under the Guidelines.  He posits that, despite taking a contrary position in the District Court (*e.g.*, Joint App. at 51 (Ransom's attorney's acknowledgment that Ransom was "considered a career offender pursuant to … § 4B1.1")), we should review his contention for plain error and vacate his sentence because the District Court's "error [in sentencing him as a career offender] was plain, … affected [his] substantial rights, and, if not rectified, … would seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Fumo*, 655 F.3d 288, 311 (3d Cir. 2011) (citation and internal quotation marks omitted).  Assuming, without deciding, that Ransom did not waive his right to challenge his classification as a career offender by repeatedly acknowledging to the District Court that he so qualified,[4] we must still reject Ransom's efforts to set aside his conviction because he has not established a basis upon which to conclude that any error that may have been committed "affected his sentence." *United States v. Williams*, 358 F.3d 956, 966 (D.C. Cir. 2004) (internal citations omitted); *see Gov't of V.I. v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005) (noting that, to affect substantial rights for purposes of plain error review, an error "must have been prejudicial: It must have affected the outcome of the district court proceedings" (citation and internal quotation marks omitted)).

---

[4] Federal Rule of Criminal Procedure 52(b) allows for "[a] plain error that affects substantial rights [to] be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b).  Here, however, Ransom brought the issue of career offender status to the Court's attention by expressly acknowledging that he was a career

We begin with the text of the Guidelines, which provide that a defendant is a "career offender" if "(1) [he] was at least eighteen years old at the time … [of] the … offense of conviction; (2) the … offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Ransom does not contest the first two of those requirements, arguing only that he cannot qualify as a career offender because his simple assault conviction was not a "crime of violence." *Id.* The Guidelines define that term as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a).

We "generally use a categorical approach to classify a prior conviction," *United States v. Johnson*, 587 F.3d 203, 208 (3d Cir. 2009), meaning that we look to "the statutory definition of the prior offense" rather than the "particular facts disclosed by the

---

offender based, in part, on his simple assault conviction. Indeed, rather than attempt to reduce his Guidelines range by arguing that his simple assault conviction could not serve as a career offender predicate, he asked the Court to give him a lower sentence in spite of his career offender status. (*See* Joint App. at 52 (arguing for a variance because the fact that the simple assault conviction served as a career offender predicate demonstrated that Ransom's criminal history was not as serious "in comparison to [those] of most individuals who have attained career offender status").) While Ransom claims his decision to proceed in that manner was not a tactical decision to waive his right to challenge his status as a career offender, we have our doubts. Nevertheless, because it does not affect our ultimate disposition, we assume for purposes of argument that Ransom's actions in the District Court did not amount to a waiver.

record of conviction," *Shepard v. United States*, 544 U.S. 13, 17 (2005) (citation and internal quotation marks omitted); *see United States v. Mahone*, 662 F.3d 651, 653 (3d Cir. 2011) (noting that "[o]ur inquiry focuses on the elements and the nature of the offense of conviction, not the details of the crime actually committed" (citation and internal quotation marks omitted)).  Here, however, as Ransom and the government agree, reference to the statutory terms is insufficient to determine whether Ransom's simple assault conviction was a crime of violence because Pennsylvania's simple assault statute can be violated based on several different types of conduct, "some of which would constitute crimes of violence [and] others [that] would not … ."[5] *Johnson*, 587 F.3d at 208.  Thus, to ascertain whether Ransom's simple assault conviction qualifies as a crime of violence, it is necessary to "look beyond the statutory elements to determine the

---

[5] Pennsylvania's simple assault statute provides that "[a] person is guilty of assault" if he or she:

> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
>
> (2) negligently causes bodily injury to another with a deadly weapon;
>
> (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
>
> (4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

18 Pa. Cons. Stat. Ann. § 2701(a).  There is no question as to whether an "intentional or knowing violation of subsection (a)(1) … would qualify" as a crime of violence. *Johnson*, 587 F.3d at 210-11.  Mere reckless conduct, by contrast, has generally been held insufficient to "qualify as a crime of violence" for career offender purposes. *Id.* at 210 n.8.

7

particular part of the statute of which [Ransom] was actually convicted." *Id.* This methodology, known as the "modified categorical approach," allows a court to "look beyond the mere fact of conviction," and, in the context of a prior conviction that resulted from a guilty plea, as Ransom's simple assault conviction did, "allows the court to examine the charging document, the terms of a plea agreement, or the transcript of a plea colloquy to determine whether a defendant's plea of guilty [to an offense] … necessarily admitted elements which constitute" a crime of violence. *Mahone*, 662 F.3d at 654 (citation and internal quotation marks omitted) (alteration in original).

Ransom, pointing to the fact that the government never introduced any such evidence so as to meet its "burden of establishing … career offender status," *United States v. Howard*, 599 F.3d 269, 271-72 (3d Cir. 2010), reasons that the District Court plainly erred when it sentenced him as a career offender. We disagree.

While Ransom is correct that the record developed before the District Court was insufficient to establish that his simple assault conviction was a crime of violence,[6] he "cannot prevail [on plain error review] … merely by asserting that there was an error." *Williams*, 358 F.3d at 966. His admission before the District Court that his simple assault conviction qualified as a crime of violence – even if not a waiver, *see supra* note 4 – requires him to "provide … some basis for suspecting that a reduction in his sentence is sufficiently likely to justify a remand." *Williams*, 358 F.3d at 966. In other words, he

---

[6] This case would appear to be a cautionary tale for prosecutors who neglect to establish the evidentiary bases for the sentences they seek. Even if a defendant makes concessions, it may be well, when feasible, to submit evidence.

must offer a foundation upon which we could conclude that, had the District Court conducted the appropriate inquiry, it would have determined that his simple assault conviction was not a crime of violence. *See United States v. Olano*, 507 U.S. 725, 741 (1993) (noting that the defendant "must persuade the appellate court" of prejudice on plain error review); *Williams*, 358 F.3d at 966-67 (determining the defendant could not show plain error where the District Court errantly "adopt[ed] the base offense level of 20 without confirming that [the defendant's] 1994 robbery conviction constituted a 'crime of violence'" because there was "nothing … to suggest any likelihood that the District Court would have assigned Williams a different base offense level had it first conducted the proper inquiry"). He has not done that. On the contrary, "the only indications on this [albeit, incomplete] record … suggest that … [Ransom's] sentence would *not* be reduced."[7] *Williams*, 358 F.3d at 967. Consequently, "we cannot say that [Ransom] has satisfied his burden of demonstrating a reasonable likelihood that the [alleged error by the] District Court[] … affected his sentence." *Id.* (citation and internal quotation marks omitted).

   B.     *Ransom's Letter-Motion*

   Ransom next argues that his sentence should be vacated because the District Court failed to formally rule on his pro se letter-motion for a downward departure. He

---

   [7] As set forth *supra* in note 1, the PSR described the contents of the criminal complaint against Ransom. Given that description, it is difficult to imagine that the criminal complaint would not, on its face, reveal that Ransom admitted to engaging in conduct that qualifies as a crime of violence. *See Johnson*, 587 F.3d at 210-11 (noting that "intentional or knowing violation of subsection (a)(1) [of the Pennsylvania simple assault statute] … would qualify" as a crime of violence).

9

acknowledges that the Court had no obligation to consider his letter-motion at all inasmuch as he was represented by counsel. *See United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012) (noting that "[p]ro se litigants have no right to hybrid representation" (citation and internal quotation marks omitted)); *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001) ("A district court has no obligation to entertain pro se motions filed by a represented party."). He claims, however, that the District Court was obliged to formally rule on his submission, *see United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (explaining that courts must "formally rul[e] on the motions of both parties and stat[e] on the record whether they are granting a departure" (citation and internal quotation marks omitted) (alteration in original)), since the Court characterized it as "a motion for a downward departure" (Joint App. at 63). The government responds that the District Court's judgment should be affirmed because Ransom's counsel "effectively abandoned" at sentencing the arguments in support of Ransom's letter-motion. (Appellee's Br. at 34.)

Although we agree with the government that Ransom's counsel's statements in reference to Ransom's pro se filing could have led the Court to conclude that Ransom did not wish to pursue the motion (*see* Joint App. at 63 ("I had discussed that with my client and I had told him about how unsuccessful those motions have been in the past.")), the Court indicated that it would "treat [Ransom's] letter as a *pro se* motion for a [downward] departure, but sentenced [him] without … explicitly ruling on" it, *United States v. Powell*, 269 F.3d 175, 179 (3d Cir. 2001). Because we thus "have no way of knowing why the [D]istrict [C]ourt denied the requested departure," *id.*, the "appropriate

10

course of action is to vacate the sentence and remand for the [D]istrict [C]ourt to clarify the basis for its ruling," *id.* at 179-80. We will, therefore, remand so that the District Court can either formally rule on Ransom's letter-motion or determine that the motion is out of order since Ransom was represented by counsel.

## III.    Conclusion

For the foregoing reasons, we will vacate the District Court's judgment of sentence and remand.